GEORGE A. SIMMONS, ADMINISTRATOR, Respondent, *v.*
JOHN C. DENT, Appellant.

December 9, 1884.

1. STOCKHOLDERS — MARRIED WOMEN. — Under the statute of 1865, a married woman might become a stockholder with all the liabilities thereof for unpaid stock.

2. —— HUSBAND AND WIFE. — A husband who, in good faith, assigns to his wife, who is capable of taking, his stock in a solvent corporation, is relieved from a stockholder's liability.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Reversed and judgment.*

T. K. SKINKER, for appellant: Power to become a stockholder, *ex vi termini*, imports power to assume the liability of a stockholder. As applied to persons *sui juris*, the rule is that a subscription for stock or an acceptance of shares imports a promise to pay calls. — Thompson on Stockholders, sect. 105; *Upton* v. *Tribilcock*, 91 U. S. 48; *Sanger* v. *Upton*, 91 U. S. 64; *Brigham* v. *Mead*, 10 Allen, 245. The savings bank act (Gen. Stats. 1865, p. 366, sect. 14), while permitting married women to " become stockholders," declares no exemption from liability in their favor; therefore none exists. — *Reciprocity Bank Case*, 22 N. Y. 15; Laws N. Y. 1849, p. 340, sect. 2. The purpose of the act could not have been merely to enable married women to accept and hold stock without incurring liability thereon. No statute was needed for this. It is a common-law right. — Thompson on Stockholders, sect. 233; *Deming* v. *Williams*, 26 Conn. 226. Nor could it have been intended to confine the privilege to married women having separate estates. No such limitation is expressed, and no language used from which it can be implied. Neither was a statute needed for this. — Thompson on Stockholders, sect. 233. Neither is this provision merely declaratory of the common law. It was not contained in the savings bank act of 1855, nor is it in the present act. — Rev. Stats. 1855, ch. 36, pp. 382, 383; Rev. Stats. 1879, ch. 21, art. 7, pp. 163–168. Nor did it ever apply to any corporations except savings banks. In case of original subscription by a married woman, how could it be claimed that she is not liable for calls? By section 2 of the act ten per cent is required to be paid at the time of subscribing, and the rest " upon such calls and upon

such terms as the directors may from time to time pre-
scribe." — Gen. Stats. 1865, p. 365, sect. 2; Acts 1868,
p. 30. This is as applicable to married women as to
others. If not, who was to pay the calls after the first ten
per cent? Not the husbands. They are not mentioned in
the act, and at common law a husband is not liable on his
wife's undertakings, except for necessaries. — Pars. on
Con. (5th ed.) 347. It was certainly not intended
there should be no liability. What sort of places for
the safe keeping of money would these banks be, with a
class of stockholders, no one could tell how numerous, sub-
ject to no liability? Besides, the legislature had no power
to create a class of stockholders exempt from liability. —
Const. Mo. 1865, art. 8, sect. 6; *Central, etc., Assn.* v.
*Ins. Co.*, 70 Ala. 120, 134. The provisions of the general
law prescribing the remedies against defaulting stockhold-
ers have always been broad enough to include married
women. — Gen. Stats. 1865, p. 328, sect. 13; p. 329, sect.
15. The stockholder's liability is a debt, and after call a
" due." — *Eppright* v. *Nickerson*, 78 Mo. 488; *Hannah* v.
*Moberly Bank*, 67 Mo. 686. There is no warrant in the
statute for distinguishing between the liability of a stock-
holder by subscription and a stockholder by transfer. The
fact that Mrs. Dent had no property other than this stock
when the transfer was made to her (if she could be said for
this reason to be insolvent), is immaterial, because the
transfer was made in good faith and not to escape liability
on the stock. — Thompson on Stockholders, sect. 215;
*Miller* v. *Ins. Co.*, 50 Mo. 57; *Provident Sav. Bk.* v.
*Skating Rink*, 52 Mo. 558; *Treadway* v. *Commercial
Agency*, 13 Mo. App. 582; *McClaren* v. *Franciscus*, 43
Mo. 452. *Bowden* v. *Johnson*, 107 U. S. 261, and *Wes-
ton's Case*, L. R. 5 Ch. App. Cas. 618, 621, are cases
of actual fraud and not applicable here. Defendant having
transferred his stock *bona fide* and with the bank's consent,
long before Tucker became a creditor, the latter has no re-

course upon him. His only recourse is against those who were stockholders at the time his debt accrued, or have become such since. — *Erskine* v. *Peck*, 13 Mo. App. 284 ; *In re London, Bombay, etc., Bank*, L. R. 18 Ch. Div. 581 ; *Parson's Case*, L. R. 8 Eq. Cas. 656.

H. I. D'ARCY and J. P. MAGINN, for the respondent : The statutes of 1865 do not authorize a married woman to become a stockholder in a bank. — Gen. Stats. 1865, pp. 365–367 ; Morawetz on Priv. Corp., sect. 602 ; *Musick* v. *Dodson*, 76 Mo. 625 ; *Clark* v. *National Bank*, 47 Mo. 17 ; *Alt* v. *Meyer*, 8 Mo. App.— ; *Griswold* v. *Seligman*, 72 Mo. 125 ; *Fisher* v. *Seligman*, 75 Mo., 24. If a married woman could not assume a personal liability on stock, her transferee does not escape his personal liability by the transfer. There is always a liability somewhere. — *Johnson* v. *Laflin*, 6 Cent. L. J., 127 ; *Webster* v. *Upton*, 1 Otto, 71 ; *Upton* v. *Tribilcock*, 10 Otto, 47 ; Ang. & Ames on Corp. (10th ed.), sect. 623 ; *Fisher* v. *Seligman*, 75 Mo., 13 ; *Skrainka* v. *Allen*, 76 Mo. 391 ; *McClaren* v. *Franciscus*, 43 Mo. 468.

BAKEWELL, J., delivered the opinion of the court.

This is a motion by a judgment creditor of the Butchers and Drovers' Bank, for execution against the defendant as a stockholder in that corporation. Defendant resists recovery on the ground that he has long since transferred his stock to his wife Ann Amanda Dent, and is no longer liable thereon. The case was submitted on an agreed statement of facts, and the court below sustained the plaintiff's motion, and ordered execution to issue against defendant for $1,500. Defendant in due time and manner excepted to the rulings of the court, and preserved his exceptions, and now brings the case to this court by appeal.

The agreed statement of facts is as follows : —

" 1. That on the 14th day of May, 1867, the Butchers and Drovers' Bank of St. Louis was duly incorporated under

chapter 68 of the General Statutes of Missouri of 1865, entitled 'Of Savings Banks and Fund Companies,' as a savings bank or savings association, located in the city of St. Louis, with a capital stock of $500,000, divided into shares of $100 each.

"2. The plaintiff is a judgment creditor of the bank to the amount of $10,800, with *nulla bona* return on his execution, but that the said indebtedness did not exist on the 13th day of November, 1869, but, accrued long thereafter.

"3. That defendant, John C. Dent, was an original subscriber for thirty shares of the capital stock of said bank in the month of May, 1867, and held the same in his own name upon the books of said bank until the 13th day of November, 1869, during which time $30 per share were paid in upon said stock; that on the 13th day of November, 1869, defendant, being at that time free from debt, executed a transfer upon the transfer books of said bank of the said thirty shares of stock to Ann Amanda Dent, who at that time was, and ever since has been, and yet is the wife of defendant; that said bank, on the 13th day of November, 1869, and at all times thereafter, knew that said Ann Amanda Dent was the wife of defendant. A copy of said transfer appears in the record. It is in the ordinary form.

"4. That prior to said date, to wit: in the year 1866, the said Ann Amanda had received from her father's estate the sum of $500 in gold coin, which sum she had delivered to her said husband to keep for her; that he had used the same for his own purposes, and that afterward, wishing to reimburse her for her money so used, he made the transfer aforesaid; that after the said transfer, viz.: on the 11th day of July, 1873, the said Ann Amanda, upon a call of the board of directors of said bank, paid upon said stock the sum of ten dollars per share by the application of dividends at said date declared upon said stock, and thereupon surrendered to said bank the certificate received by her upon the transfer aforesaid, and received in lieu thereof a certi-

ficate, copy of which appears in the record. It recites that Mrs. Ann Amanda Dent is entitled to thirty shares of the stock, ' the par value of which is $100 per share, of which forty per cent has been paid. This certificate is issued subject to the right of the bank to call in the remainder in such sums and at such times as its board of directors may order, and for the payment of which this stock is hypothecated.' For this certificate she gave her personal receipt. Again, on the 10th day of July, 1875, upon a further call of said board, the said Ann Amanda paid upon the said stock the further sum of ten dollars per share by application of dividends at said date declared upon said stock, and thereupon surrendered to said bank the certificate last above described, and received in lieu thereof a certificate, copy of which appears in the record, and is identical with the one surrendered, except that it recites that fifty per cent had been paid.

" For this defendant John C. Dent gave his receipt.

" 5. That no other payments have ever been made on said stock, and that $50 per share yet remains unpaid, and that no call has ever been made by said board of directors for said balance; that after the 13th day of November, 1869, seven dividends were from time to time declared by said bank; that on each of these occasions the name of said Ann Amanda appeared in the books of said bank as the holder of said thirty shares of stock, and on each occasion the dividend was paid to her in person, and she receipted in writing for the same in her own name; that the last of these dividends was paid in the month of July, 1875, on or about the same day when the receipt hereinbefore referred to was given by the said John C. Dent; that ever since the said transfer of November 13th, 1869, said Ann-Amanda has claimed the said thirty shares of stock as her property, and said claim has always been recognized by said bank and by said John C. Dent, and said John C. has at no time since the transfer asserted or offered to assert any title

thereto in himself, and has at no time had any stock in said bank other than said thirty shares.

" 6. That on the 29th day of November, 1873, by deed duly recorded, for an expressed consideration of $18,000 one John Mahon conveyed to said John C. Dent a lot of land in the city of St. Louis, with all the improvements thereon, in trust for the said Ann Amanda, her heirs and assigns, for the sole and separate use, benefit and enjoyment of said Ann Amanda, and entirely free from all control, restraint or interference whatever of said John C. with full power in said Ann Amanda to direct the disposition of said lands, and also to appoint another trustee to hold said land in the place and stead of the said John C. ; that on the 11th day of June, 1881, said Ann Amanda and her said trustee sold and conveyed said lot to one Web. M. Samuel, and that said Ann Amanda has not now any separate estate, and that at the date of said transfer she had no property, separate or otherwise, except said stock."

There can be no doubt whatever, that, where a company is in difficulties, and the owner of stock makes a formal transfer to a man of straw to escape individual liability, such a transfer made in fraud of the creditors of the corporation does not exempt the transferor from the individual liability imposed upon him by the statute. A transferor who transfers stock to one whom he knows to be incapable of filling the place of a solvent stockholder, in order to escape liability upon the stock, would be estopped to deny, as to creditors, that he was still a stockholder, and would remain liable to the corporation creditors. *McClaren* v. *Franciscus*, 43 Mo. 467 ; *Pro. Sav. Inst.* v. *Jackson Place Skating Rink*, 52 Mo. 558. The American cases, as is remarked in Thompson on Stockholders (sect. 215), seem to make this very much a question of intent. " It is a universal principle of common law," says Adams, J., in *Miller* v. *Great Republic Insurance Company* (50 Mo. 57), " that the absolute ownership of property carries with it

the right to transfer or dispose of it as the owner may deem proper. He can not do this so as to defeat the claim of honest creditors. In a case like this, a creditor has no claim against a stockholder until he has exhausted his remedy against the company; or rather, his claim commences from the time he issues his execution against the company. If, before any execution be issued, the stockholder shall have honestly, and without any intention to defeat the creditors of the company, sold and transferred his stock, the mere fact that the purchaser was insolvent at the time, is not sufficient to hold such stockholder liable for the debts. The question in such case is, whether the transfer was fraudulent and void as to the creditors of the company. If the stockholder knew of the insolvency at the time of the transfer, it would be very strong evidence of fraud, and it would be hard to resist the conclusion that such a transfer was made in bad faith."

The English doctrine seems to be, that the stockholder is liable until a substitute is found for him, while the American doctrine would seem to be, that, where the transfer is effected, though to an infant or to one incapable of taking, the question is one of good faith, and the liability of the transferor to creditors ceases where the transferor had no knowledge of the incapacity of the transferee.

At common law, a transfer to the wife by the husband could, however, hardly relieve him of liability upon the stock; could the transfer be effected, he would be liable upon the stock as her stock, as he would be liable upon stock received by her from any source during coverture, ( *Thomas* v. *City of Glasgow Bank*, 6 Reltie, 607) and which he had reduced to possession.

By statute in this state, however, the wife was capable of becoming a stockholder, that is, as we interpret the law, of holding stock in her own right, and of assuming all the rights and all the liabilities of a stockholder. If we are right in this view of the law, we think that, upon well set-

tled principles, the agreed statement shows such a transfer of stock as entirely relieved the defendant of any liability in account of it to the creditors of the company.

The savings bank act of 1865, in force when the Butchers and Drovers' Bank was incorporated, and when the transfer was made to Mrs. Dent (Gen. Stats. 1865, p. 366 sec. 14), authorized married women to become stockholders in a bank, and to assume the liability of a stockholder. Independently of the statute, a married woman might hold stock.

The English rule is said to be, that, where a man marries a stockholder, if he allows the shares to remain in her name, he is liable upon them, but where he has not reduced them to possession, this liability is only for liabilities of the company accruing during coverture. Thomp. Stock., sec 233. In New York it is held, however (*In re Reciprocity Bank*, 22 N.Y. 9), that, where the *status* of the married woman remains as at common law, if the husband reduced to possession the stock owned by the wife before coverture, he will be liable to creditors if the corporation fails ; but where there was no reduction to his possession, she would be liable to the creditors under a statute making the shareholders individually liable.

The language of the Missouri statute is as follows (Gen. Stats. 1865, p. 366, sec 14): "Married women may become stockholders, and may deposit money with any bank or savings institution incorporated under the laws of this state, or doing business by virtue of the several acts of congress providing for the organization of national banks, and any receipt or other acquittance given by such married woman for such deposits shall be valid and binding as if given by a *feme sole*."

We see no reason for supposing, as is suggested by learned counsel for respondent, that the legislature intended this provision to extend only to fund companies.

It is true that, in *Clark* v. *National Bank* (47 Mo. 17),

Judge Currier, in delivering the opinion of the supreme court, says, in regard to this section: "This statute empowers a married woman to execute valid acquittance for deposits of the class mentioned, but leaves her in all other respects in the same condition she was at common law. Independently of the statute, she was competent to make deposits and hold shares in moneyed corporations. In such cases, if she survived her husband, she would hold the stock or deposit as against her husband's legal representatives, and so, except as to creditors, although the consideration of the deposit or purchase moved from the husband. But this does not affect the right of the husband, during the lifetime of the wife, to reduce her chattels and choses in action into possession and thus defeat her rights. The statute, then, has this extent and no more: it empowers a married woman in the cases specified to execute a valid receipt or discharge. It enables her to deal with the bank without the intervention of her husband, but it does not take from the husband his common-law rights in, or control over, the fund. There is nothing in the act to intimate such a purpose. When the legislature shall deem it expedient to modify the common-law relations between husband and wife, and to divest the former of his interest in and control over the personal effects of the latter, it will doubtless so declare in fitting and appropriate terms, and not leave its purposes in this respect to a doubtful construction."

This language, however, must be considered as applying to the question before the court, which was simply whether a husband by his check upon the bank could reduce to possession the money deposited there by his wife. We do not think it can be extended to mean that the legislature, in saying that a wife must be a stockholder, meant nothing, or meant that she could be a stockholder without assuming any of the obligations of a stockholder.

In Missouri, it is the old established doctrine that, when

a woman contracts, she contracts on the credit of her property, as to which she is in equity a *feme sole*, and may bind it by her contracts, whether in writing or not, and whether the property be referred to or not, and that it is liable for her general engagements. *Miller* v. *Brown*, 47 Mo. 504; *Hooten* v. *Ransom*, 6 Mo. App. 23. We are of opinion that the legislature, by providing that a woman may be a stockholder in a savings bank, meant, and could mean only, that she should be understood to enter into the ordinary engagements of a stockholder by subscribing for or accepting stock, and should not, because of any disability of coverture, be exempted from the ordinary liabilities. The acceptance of shares in an ordinary case, imparts a promise to pay calls for unpaid subscriptions. 91 U. S. 48; 3 Sandf. 161; 10 Allen, 245. The constitution in force when this stock was transferred (Const. 1865, art. VIII. sect. 56), provides that, in all cases " each stockholder shall be individually liable, over and above the stock, by him or her owned, and any amount paid thereon, in a further sum at least equal in amount to such stock." It was not competent for the legislature to nullify this provision; and when it said that a married woman may be a stockholder, it was quite unnecessary to add that she should be liable as other stockholders for unpaid stock.

The object of the statute declaring the individual liability of the stockholder is to establish something behind the liability of the corporation as a protection to creditors. In the case before us, the transferee was capable of assuming the liability of a stockholder. That she was not at the time of the transfer pecuniarily responsible, is immaterial under the facts agreed upon. She was legally liable, and might become responsible. As the corporation was prosperous at the time of the transfer, as appears by the dividends declared, and as the transfer was not made with intent to defraud or escape liability on the part of the transferor, we are of opinion that he was thereby released.

Lowell Tr. Stock., sect. 197; *Miller* v. *G. R. Ins. Co.*, 50 Mo. 57.

We, therefore, think that the judgment should be reversed, and judgment entered here for defendant. It is so ordered. All the judges concur.